UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SULZER MIXPAC AG,<br><br>                    Plaintiff,<br><br>-against-<br><br>DXM CO., LTD., and DENTAZON<br>CORPORATION,<br><br>                    Defendants. | 19 Civ. 9404 (LAP)<br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court is a motion brought by Plaintiff Sulzer
Mixpac AG ("Plaintiff" or "Mixpac") seeking an order preliminarily
enjoining Defendants DXM Co., Ltd and Dentazon Corporation
("Defendants") from offering for sale, selling, distributing, or
advertising certain "candy colored" dental mixing tips that
Plaintiff alleges infringe its trademark rights.  (See Motion for
Preliminary Injunction (the "PI Motion"), dated April 15, 2020
[dkt. no. 49].)[1]  For the reasons detailed below, that motion is
GRANTED.

---

[1] (See Plaintiff's Memorandum of Law in Support of Motion for
Preliminary Injunction ("PI Mem."), dated April 15, 2020 [dkt. no.
50]; Defendant's Memorandum of Law in Opposition to Motion for
Preliminary Injunction ("PI Opp."), dated May 13, 2020 [dkt. no.
56]; Plaintiff's Reply Memorandum of Law in Support of Motion for
Preliminary Injunction ("PI Reply"), dated June 3, 2020 [dkt. no.
57].)

I.   <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>

Plaintiff Mixpac is the exclusive manufacturer of a proprietary
system for two-part mixing adhesives for dental applications.
(Complaint ("Compl."), dated October 10, 2019 [dkt. no. 1] at
¶ 12.)  A critical component of that system is a mixing tip that
mixes the materials that constitute the adhesive before they are
used for a dental application.  (<u>Id.</u>)

Mixpac has manufactured these mixing tips for over 20 years and
has historically produced them in a variety of distinctive colors.
(<u>Id.</u> ¶¶ 13-14.)   Those colors--described by Mixpac and by
Defendants as "the Candy Colors"--include yellow, teal, blue,
pink, purple, and brown.  (<u>Id.</u> ¶ 15.)  Because the Candy Colors
indicate that Mixpac is the manufacturer of the dental tips, (<u>id.</u>
¶ 15), Mixpac has sought and obtained many U.S. Trademark
Registrations for the various Candy Colors, (<u>id.</u> ¶ 18; <u>see also</u>
Answer and Counterclaims ("Countercl."), dated December 2, 2019
[dkt. no. 25] at ¶ 8.)  These registrations cover use of the Candy
Colors on various products, including mixing tips with a "dome-
shaped" lower portion, (Compl. Ex. B), mixing tips without the
"dome-shaped" lower portion, (Compl. Ex. C), and "mixing material
cartridge caps," (Compl. Ex. D).

In addition, Mixpac has expended significant resources to
advertise and enforce the Candy Colors trademarks.  For example,
Mixpac has used various seals--the "Look For It!" and "Mixpac

2

Quality" seals--on its products to "reinforce that Mixpac is the sole source for its distinctive mixing tips and that the Candy Colors are Mixpac trademarks." (Id. ¶¶ 21-22.) In addition, Mixpac has invested heavily in a variety of advertising, media, and marketing methods, including advertisements in publications, on the web, and on social media. (Id. ¶ 23.) Of greater importance, Mixpac has aggressively enforced its trademark rights through litigation against would-be infringers. As Defendants note, Mixpac has litigated "numerous lawsuits and obtained settlements" against alleged infringers in a campaign to protect its rights in the Candy Colors. (See Countercl. ¶ 9.) The validity of the Mixpac's various trademarks in the Candy Colors have been (very recently) recognized in the Southern District of New York. See Findings of Fact and Conclusions of Law, dkt. no. 144, Sulzer Mixpac AG v. A&N Trading Co., No. 16 Civ. 9175 (LAK) (S.D.N.Y. Aug. 14., 2019)(recognizing that Mixpac's trademarks in the Candy Colors are "strong, valid, and non-functional.").

Defendants also produce mixing tips, an activity that has gotten them in hot water with Mixpac before. In 2015, Mixpac sued Defendants for producing and selling mixing tips that infringed Mixpac's trademarks in the Candy Colors. See Sulzer Mixpac AG v. DXM Co. Ltd., et. al, No. 15 Civ. 9359 (ER) (S.D.N.Y.). That lawsuit was resolved via a confidential settlement agreement (the

3

"2016 Settlement Agreement")[2] and a consent judgment that permanently enjoined Defendants from selling the products that infringed Mixpac's Candy Colors trademarks. (See Declaration of Paul Jutzi in Support of Motion for Preliminary Injunction ("Jutzi Decl."), dated April 15, 2020 [dkt. no. 51] at ¶ 74; see also Consent Judgment and Permanent Injunction, dated June 16, 2016 [dkt. no. 47 in 15 Civ. 9359].) Of essential note, in the 2016 Settlement Agreement Defendants agreed not to create "other mixing tips which create a likelihood of confusion" with Mixpac's Candy Color products. (Settlement Agreement ¶ 8.) In addition, as part of that agreement Mixpac permitted Defendants to replace the infringing mixing tips at issue in the 2016 litigation with "New Mixing Tips," which were defined under the settlement agreement as "mixing tips that do not include the Candy Colors in any manner." (See 2016 Settlement Agreement at 2.) Defendants accordingly began to offer clear mixing tips that were colorless in accordance with the terms of the settlement. (See Compl. ¶ 36; see also Figure 1, below.)

---

[2] Because the 2016 Settlement Agreement remains confidential, the Court granted Mixpac leave to file a copy of that settlement agreement under seal on February 7, 2020. (See Order Allowing Sealed Filing, dated February 7, 2020 [dkt. no. 44].)



**Figure 1: Defendants' Colorless Mixing Tips**

In 2018, however, Mixpac became aware that Defendants were offering colored mixing tips once again.  These tips (the "Accused Mixing Tips") utilized what looked like three of Mixpac's Candy Colors-- Yellow, Teal, and Blue --on "wing shaped" covers for the mixing tips.  (Jutzi Decl. ¶¶ 75-76; see also Figure 2, below.)



**Figure 2: Defendants' New Mixing Tips Featuring Candy Color Wings**

Upon realizing that Defendants were offering mixing tips using colors that were suspiciously similar to the Candy Colors, Mixpac twice requested that Defendants cease production of the Accused Mixing Tips. (Jutzi Decl. ¶ 78; see also PI Mem. at 7.)

Efforts to resolve the dispute failed, and Mixpac accordingly initiated the instant suit in October 2019. (See Compl.) Mixpac asserted seven claims against Defendants in its Complaint: (1) breach of the 2016 Settlement Agreement, (Compl. ¶¶ 60-65); (2) enforcement of the June 2016 Judgment and Permanent Injunction, (id ¶¶ 66-72); (3) trademark infringement of the Candy Colors trademarks under 15 U.S.C. §§ 1125(a) and 1114, (id. ¶¶ 73-82); and (4) trademark counterfeiting under 15 U.S.C. § 1114, (id. ¶¶ 83-87); (5) false designation of origin under 15 U.S.C. § 1125(a), (id. ¶¶ 88-94); (6) common law trademark infringement, (id. ¶¶ 95-100); and (7) common law unfair competition, (id. ¶¶ 101-107).

Mixpac's complaint did little to slow Defendants' allegedly infringing activities, however. In December 2019, Defendants introduced versions of the Accused Mixing Tips using two more Candy Colors--Pink and Brown--at the 2019 Greater New York Dental Meeting. (Jutzi Decl. at ¶¶ 90; see also Figure 3, below.) Those mixing tips were featured at Defendants' exhibit at the February 2020 Chicago Dental Society Midwinter Meeting. (Id. ¶ 89.) Most

6

notably, reference to Mixpac's products have begun to feature in advertisements for Defendants' products on third-party seller websites such as eBay.  For example, as of April 2020 those advertisements referred to Defendants' mixing tips as finely-made imitations of the Mixpac tips and suggested that they were not "cheaply made . . . imitations [of Mixpac's tips] with [a] 20% to 30% defect rate."  (Id. ¶ 93.)



**Figure 3: Defendants' Advertisement of Colored Mixing Tips at Trade Show**

II.  <u>LEGAL STANDARDS</u>

"A decision to grant or deny a preliminary injunction is committed to the discretion of the district court." <u>Polymer Tech. Corp. v. Mimran</u>, 37 F.3d 74, 78 (2d Cir. 1994) (citation omitted). To obtain a preliminary injunction, Mixpac must establish that it will suffer irreparable harm and "either (1) likelihood of success

on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Trump v. Deutsche Bank AG, 943 F.3d 627, 635 (2d Cir. 2019), cert. granted, 140 S. Ct. 660 (2019); see also Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010).

III. DISCUSSION

a. Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (citation omitted) (internal quotation marks omitted).  In the trademark context, irreparable harm can exist "'when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial,' because loss of control over one's reputation is neither 'calculable nor precisely compensable.'"  New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp.2d 305, 343 (S.D.N.Y. 2010)(quoting Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir.1985)).

Here, Mixpac has demonstrated that Defendants' manufacture and sale of the Accused Mixing Tips have the potential to cause such injury to its reputation and goodwill.  Mixpac has expended

8

significant resources since 1997--when it first introduced its
mixing system with the Candy Colors (Jutzi Decl. ¶¶ 13-16)--
building the Candy Colors brand.  Mixpac specifically chose the
Candy Colors to be "pleasing to the eye and [to] create a unique
look and appearance to distinguish Mixpac's products from other
manufacturers," (id. at ¶ 19), and has accordingly spent millions
of dollars advertising and marketing the Candy Colors to consumers
in the dental market, (id. ¶ 50, ¶¶ 57-62).  Moreover, Mixpac has
spent untold amounts in litigation against would-be infringers to
protect the Candy Colors brand.  (See id. ¶ 70.)  These steps
have proven remarkably successful.  "Sales of products featuring
the Candy Colors since [their introduction in] 1997 have been
significant" and have resulted in "many millions of dollars of US
sales."  (Id. ¶ 36.)  More importantly, the dental industry has
grown to associate the Candy Colors with Mixpac's high-quality,
Swiss-made mixing tips.  (Id. at ¶¶ 20-24.)  Cf. Barefoot Contessa
Pantry, LLC v. Aqua Star (USA) Co., No. 15 Civ. 1092 (JMF), 2015
WL 845711, at *7 (S.D.N.Y. Feb. 26, 2015).

Defendants are trying to capitalize on that success.
Defendants do not bother disputing that they are using the Candy
Colors in their own products and have even acknowledged that the
use of the Candy Colors on the Accused Mixing Tips has bolstered
their sales performance.  (See PI Opp. at 16 (acknowledging
Defendants' use of Candy Colors); see also Declaration of Durok

Jung ("Jung Decl."), dated May 12, 2020 [dkt. no. 56-1] at ¶ 9.) Tellingly, Defendants, if they wished, could produce their mixing tips using different colorations--indeed, numerous other manufacturers produce mixing systems without making use of the Candy Colors. (Jutzi Decl. ¶ 37.)

Whatever their motivations for using the Candy Colors, Defendants' continued production of the Accused Mixing Tips threatens Mixpac's brand and reputation. Recent events have placed the irreparable harm that Mixpac could suffer as a result of Defendants activities in stark relief. While Defendants argue separately that there have been "no reported instance of any actual confusion," (PI Opp. at 23), sellers of Defendants' product appear to view their similarity to Mixpac's products as a selling point. To wit, as of April 2020 advertisements of Defendants' products by sellers on eBay suggested that (1) like Mixpac's products, the Accused Mixting Tips are "made in Switzerland," (Jutzi Decl. ¶ 94), even though they are not, and (2) the Accused Mixing Tips are unlike other "cheaply made MIXPAC imitations with a 20% to 30% defect rate," (id. ¶ 93). It goes without saying that if the Accused Mixing Tips are viewed as "imitations" of Mixpac's products, the Mixpac Brand could be irreversibly affected. This alone demonstrates why Defendants' activities threaten to damage Mixpac's brand irreparably.

Defendants have argued in opposition that Mixpac's delay in bringing the present motion undermines their claims of irreparable harm. (PI Opp. at 3-6.)  Defendants are certainly correct that unreasonable delays in seeking a preliminary injunction can undermine a claim of irreparable harm.  See Wolk v. Kodak Imaging Network, Inc., No. 10 Civ. 4135 (RWS), 2011 WL 940056, at *8 (S.D.N.Y. Mar. 17, 2011); see also Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 968 (2d Cir. 1995).  But, while this argument possesses some superficial appeal, the Court finds it lacks teeth given the facts of this case.  Notably, Mixpac can explain any delay in seeking injunctive relief because in the time since it originally discovered the purported infringement it has "actively pursu[ed] its rights in other ways."  See Abbott Lab. v. Adelphia Supply USA, No. 15 Civ. 5826 (CBA) (MDG), 2015 WL 11004522, at *7 (E.D.N.Y. Dec. 23, 2015). In February 2019, Mixpac first warned Defendants that its new colored mixing tips violated the 2016 Settlement Agreement.  (PI Mem. at 7.)  Mixpac then tried to resolve the dispute on two separate occasions in May 2019 and in late September 2019.  (Id.)  Thereafter, Mixpac filed the present suit, ostensibly hoping that the specter of litigation would spur Defendants to cease their use of the Candy Colors. However, it became clear that Defendants had remained undeterred when, in February 2020, they began offering for sale mixing tips using even more Candy Colors.  (See Jutzi Decl. ¶ 90.) More

11

worrisome, in April 2020 Mixpac became aware that sellers of Defendants' products were running advertising for their Candy Colored mixing tips that suggested the product was a well-made imitation of Mixpac's products, not another "cheap knock off." (Id. ¶¶ 92-94; see supra at 9-10.) And, indeed, Mixpac sought injunctive relief shortly after Defendants escalated their potentially infringing behavior and its brand began to be referenced directly by online sellers of Defendants' products. Accordingly, the Court finds that Mixpac did not unduly delay its request for injunctive relief.

Finally, given the Court's conclusion that Mixpac is likely to succeed on its breach of contract claim, see infra at 12-17, the plain language of the 2016 Settlement Agreement provides additional ground for a finding of irreparable harm. In relevant part, the 2016 Settlement Agreement explicitly provides that, by executing the agreement, Defendants agreed that a breach "would cause irreparable harm and that Mixpac shall be entitled to injunctive relief." (See 2016 Settlement Agreement ¶ 13.) As a consequence, the Court's separate conclusion that Mixpac is likely to succeed on its breach of contract claim necessarily means that Mixpac is likely to suffer irreparable harm as a result of Defendants' breach.

Accordingly, the Court concludes that Mixpac has demonstrated that it will suffer irreparable harm to its Candy Colors brand in the absence of preliminary injunctive relief.

b. Likelihood of Success

To establish a likelihood of success on the merits, a plaintiff "need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent." Broker Genius, Inc. v. Volpone, 313 F. Supp.3d 484, 497 (S.D.N.Y. 2018)(citations omitted). Here, the Court finds that Mixpac has a strong likelihood of success on its claim for breach of the 2016 Settlement Agreement, see supra at 6, which alone justifies the issuance of a preliminary injunction.[3]

Neither party disputes that the 2016 Settlement Agreement is governed by New York law. (See 2016 Settlement Agreement ¶ 10.) To establish a breach of contract claim--in this case, breach of the settlement agreement--under New York law, Mixpac would have to show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004).

---

[3] Even if Mixpac had not shown a likelihood of success on the merits, it has "[a]t a minimum . . . shown the existence of serious questions going to the merits that make fair ground for litigation." AB Electrolux v. Bermil Indus. Corp., 481 F. Supp.2d 325, 335 (S.D.N.Y. 2007).

Only item (3) of that inquiry is in dispute here. Determining whether Defendants likely breached the terms of the 2016 Settlement Agreement require this Court to interpret the Agreement with the "primary objective" of "giv[ing] effect to the intent of the parties as revealed by the language they chose to use." <u>Seiden Assocs., Inc. v. ANC Holdings, Inc.</u>, 959 F.2d 425, 428 (2d Cir. 1992).

The 2016 Settlement Agreement permitted Defendants to produce and sell its "New Mixing Tips," (2016 Settlement Agreement ¶ 5), which are defined in the Agreement's introduction as "new mixing tips that do not include the Candy Colors in <u>any</u> manner," (<u>id.</u> at 2 (emphasis added)). In addition, the 2016 Settlement Agreement prohibited Defendants from producing and selling "other mixing tips which create a likelihood of confusion with the . . . Candy Colors." (<u>Id.</u> ¶ 8.)



**Figure 4: Comparison Between Colorless Mixing Tips Permitted by 2016 Settlement Agreement and the Accused Mixing Tips**

Mixpac avers that Defendants' products featuring the Candy Colors are a version of the New Mixing Tips permitted by the 2016 Settlement Agreement and thus are flatly violative of the plain terms of the contract. (See PI Reply at 3-5.) In opposition, Defendants suggest that the Accused Mixing Tips are "different" from the New Mixing Tips as defined in the 2016 Settlement Agreement and thus are not prohibited from using the Candy Colors in "any manner" per the Agreement's definition. (PI Opp. at 10-11; see also Figure 4, above.) Accordingly, Defendants argue that their products would only violate the 2016 Settlement Agreement if they create a likelihood of confusion with the Candy Colors trademarks, (see Settlement Agreement ¶ 8), and that Mixpac has not demonstrated that their products are likely to do so, (PI Opp. at 10-13.)

The Court agrees with Mixpac that the Accused Mixing Tips would likely breach the 2016 Settlement Agreement because they should be considered "New Mixing Tips" that may not employ the Candy Colors "in any manner" whatsoever. Defendants are admittedly correct that the Accused Mixing Tips are "different." But they are only different in the most literal sense. At the most basic level, the Accused Mixing Tips are a near carbon copy of the "New Mixing Tips" that were permitted by the 2016 Settlement Agreement. They feature the same "dome-shaped," clear base as the clear mixing

tips that all agree were permitted by the Agreement. (See Figure 1, supra at 5.) Indeed, the only thing to differentiate them from the permitted mixing tips is the Candy Colored wing grafted on to the base. (See Figure 4, above.) Moreover, the clear mixing tips are sold together as a unit with the Candy Colored wing. At this preliminary stage, the Court finds that this is enough to demonstrate that Mixpac would likely be successful on its claim for breach of the 2016 Settlement Agreement.

Moreover, under New York law, "a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." Greenwich Capital Fin. Prods., Inc. v. Negrin, 74 A.D.3d 413, 415, 903 N.Y.S.2d 346, 348 (N.Y.App.Div. 1st Dep't 2010). Here, the 2016 Settlement Agreement's explicit mandate that Defendants' New Mixing Tips do not feature the Candy Colors in any way, shape, or form signals an intent for the definition of "New Mixing Tips" in the 2016 Settlement Agreement sweep broadly.[4] Relatedly, and somewhat ironically, the definition of "New Mixing Tips" is likely so strongly worded precisely to prevent additional

---

[4] Defendants appear to think the Settlement Agreement's definition of "New Mixing Tips" is irrelevant or carries less weight because it appears in the Agreement's recitals. (PI Opp. at 11.) Even assuming arguendo that this was true (which it is not), "the 'Whereas' clauses of a contract . . . furnish a background in relation to which the meaning and intent of the operative provisions can be determined." Jim Bouton Corp. v. Wm. Wrigley Jr. Co., 902 F.2d 1074, 1077 (2d Cir. 1990).

rounds of litigation over what is and is not permitted under the terms of the Agreement. Thus, from Mixpac's perspective, the Agreement would have little bite if the definition of "New Mixing Tips" allowed Defendants to escape the consequences of the agreement simply by adding a Candy Colored wing over the clear mixing tips permitted by the Agreement. The Court accordingly finds, for purposes of the instant motion, that an interpretation of the 2016 Settlement Agreement that would allow Defendants to do so would be commercially unreasonable.[5]

In light of the foregoing, the Court concludes that Mixpac has demonstrated a likelihood of success on the merits on its claim for breach of the 2016 Settlement Agreement.

IV.   <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff's motion for a preliminary injunction [dkt. no. 49] is <u>GRANTED</u>. Because of Mixpac's stable financial condition and the parties' litigation history, no bond will be required. Defendants are preliminarily enjoined from offering for sale, selling, distributing, or advertising mixing tips bearing the Candy Colors of yellow, teal,

---

[5] It is true that Defendants "never agreed to forever forgo for all time using any colors" in its new mixing tips. (PI Opp. at 11). What they did agree to, however, was not to use the Candy Colors "in any manner"--precisely what they are doing here. And the Candy Colors are not necessary. As noted above, numerous other manufacturers of mixing tips produce their products without employing the Candy Colors. (See <u>supra</u> at 9).

17

blue, purple, pink, and brown in any manner, including on wing-shaped covers for mixing tips.

Accordingly, IT IS THEREFORE ORDERED that DXM Co. Ltd. and Dentazon Corporation, their principals, officers, members, agents, servants, employees, attorneys, and those persons under their control or in active concert or participation with them are hereby preliminarily enjoined from:

1. Selling, offering for sale, distributing or advertising the Accused Mixing Tips with Candy Colored wing covers (shown below in Figure 5) or any other dental mixing tips that bear the Mixpac Candy Colors in any manner, and/or any colorable imitations thereof;



**Figure 5: Enjoined Mixing Tips**

2. Using any of the Mixpac Candy Colors in connection with the sale, offering for sale, distributing or advertising of dental mixing tips or accessories including in any manner or location on the products, or on packaging or displays for the products; and

3. Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities described in the paragraph above.

**SO ORDERED.**

Dated:     New York, New York
           July 2, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge