UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
SULZER MIXPAC AG,                        :
                                         :
                    Plaintiff,           :
                                         :      19 Civ. 9404 (LAP)
          v.                             :
                                         :           ORDER
DXM CO., LTD., and                       :
DENTAZON CORPORATION,                    :
                                         :
                    Defendants.          :
----------------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court are the cross-motions of Plaintiff Sulzer

Mixpac ("Mixpac") and Defendants DXM Co, Ltd. and Dentazon Corp.

(together, "Defendants" or "DXM").  Defendants move for judgment

on the pleadings, to vacate the 2016 Consent Injunction and 2020

Preliminary Injunction, and to rescind the 2016 Settlement

Agreement.  (See Defendants' Memorandum in Support of Motion

("Mot."), dated December 13, 2021 [dkt. no. 108].)[1]  For its

part, Plaintiff moves to dismiss all of Defendants'

counterclaims and two of Defendants' affirmative defenses.  (See

---

[1] Plaintiff opposed (Plaintiff's Memorandum of Law in Opposition
("Opp."), dated January 3, 2022 [dkt. no 109]); Defendants
submitted a reply (Defendants' Reply Memorandum of Law
("Reply."), dated January 18, 2022 [dkt. no. 110]); and
Plaintiffs submitted a sur-reply (Plaintiff's Sur-Reply to
Defendants' Reply ("Sur-reply."), dated February 1, 2022 [dkt.
no. 113]).

Plaintiff's Memorandum of Law in Support of Motion to Dismiss ("MTD"), dated January 17, 2020 [dkt. no. 38]).[2]

I.   **Background**

  A.   **Procedural History**

Mixpac is the manufacturer of a proprietary system for two-part mixing adhesives for dental applications. (Complaint ("Compl."), dated October 10, 2019 [dkt. no. 1] ¶ 12.)  One component of that system is a mixing tip that mixes the materials that together constitute the dental adhesive used in certain procedures. (Id.)  Mixpac has manufactured these mixing tips for over 20 years and has historically produced them in a variety of distinctive colors. (Id. ¶¶ 13-14.) Those colors-- described by Mixpac and by Defendants as "the Candy Colors"-- include yellow, teal, blue, pink, purple, and brown. (Id. ¶ 15.) Because the Candy Colors indicate that Mixpac is the manufacturer of the dental tips (id.), Mixpac has sought and obtained many U.S. Trademark Registrations for the various Candy Colors (id. ¶ 18; see also Answer and Counterclaims ("Countercl.") ¶ 8, dated December 2, 2019 [dkt. no. 25].) These registrations cover use of the Candy Colors on various

---

[2] Defendants opposed (Memorandum in Opposition to Plaintiff's Motion to Dismiss Counterclaims and Defenses ("MTD Opp."), dated January 31, 2020 [dkt. no. 42]); and Plaintiff replied (Plaintiff's Reply Memorandum of Law in Support of Motion to Dismiss ("MTD Reply."), dated February 7, 2020 [dkt. no. 46]).

products, including mixing tips with a "dome-shaped" lower portion (Compl. Ex. B), mixing tips without the "dome-shaped" lower portion (Compl. Ex. C), and "mixing material cartridge caps" (Compl. Ex. D).

In 2015, Mixpac sued Defendants for producing and selling mixing tips that allegedly infringed Mixpac's trademarks in the Candy Colors, see Sulzer Mixpac AG v. DXM Co. Ltd., No. 15 Civ. 9359 (ER) (S.D.N.Y.).  The parties resolved that lawsuit through a confidential settlement agreement (the "2016 Settlement Agreement")[3] and a parallel consent judgment that permanently enjoined Defendants from selling the products that allegedly infringed Mixpac's Candy Colors trademarks.  See Consent Judgment and Permanent Injunction ("2016 Consent Judgment"), dated June 16, 2016 [dkt. no. 47 in 15 Civ. 9359].

Despite the 2016 Settlement Agreement and the 2016 Consent Judgment, however, Mixpac alleges that it subsequently became aware that Defendants reverted to producing, marketing, and selling allegedly infringing mixing tips.  (Compl. ¶¶ 45-54.) Hence, Mixpac brought the present lawsuit against Defendants for breach of the 2016 Settlement Agreement, enforcement of the 2016 Consent Injunction, statutory and common law trademark infringement, trademark counterfeiting, false design origin, and

---

[3] The 2016 Settlement Agreement is filed under seal.

3

unfair competition.  (<u>Id.</u> ¶¶ 60-107.)  On July 2, 2020, the Court granted Mixpac's motion for a preliminary injunction barring Defendants from the sale, distribution, or advertising of mixing tips bearing the Candy Colors (the "2020 Preliminary Injunction").  <u>See</u> <u>Sulzer Mixpac AG v. DXM Co., Ltd.</u>, No. 19 Civ. 9404 (LAP), 2020 WL 3619047, at *6 (July 2, 2020).  As to likelihood of success on the merits, the Court concluded that "Mixpac has demonstrated a likelihood of success on the merits on its claim for breach of the 2016 Settlement Agreement."  <u>Id.</u>

As part of the 2016 Settlement Agreement, Defendants generally agreed not to challenge the validity of Mixpac's Candy Colors trademarks unless Mixpac brought an action against Defendants in connection with products different from those at issue in the 2015 litigation.  (Settlement Agreement ¶ 9.)

**B.   The Present Motions**

**1.   Defendants' Motion for Judgment on the Pleadings**

According to Defendants, the Second Circuit's decision in a different case involving Mixpac's Candy Colors--<u>Sulzer Mixpac AG v. A&N Trading Co.</u>, 988 F.3d 174 (2d Cir. 2021), <u>cert. denied</u> 142 S. Ct. 1359 (2022)--compels judgment in their favor.  In <u>A&N Trading Co.</u>, the Court of Appeals reversed the decision of the district court and held that certain of Mixpac's Candy Colors trademarks to color-code mixing tips by size are functional and thus not protectable under Trademark law.  <u>Id.</u> at 183 ("We thus

4

conclude that the colors are functional, rendering Mixpac's trade dress unprotectable.")  Defendants argue that

> since the Plaintiff's Candy Color Trademark rights asserted against Defendants largely overlap with and use the same color-coding system as the Candy Color Trademark rights asserted against A&N, it follows that all of the former rights are also effectively invalid. Indeed, all of Plaintiff's trademark rights which use Candy Colors to color-code mixing tips and related products . . . are effectively invalid.

(Mot. at 2.)

More specifically, as to Counts III through VII, which sound in trademark infringement and related causes of action, Defendants argue that because the Candy Colors marks are functional, "there are no rights which can be found to be infringed and these Counts should be dismissed as a matter of law."  (Id. at 3.)

As to Counts I and II, which allege breach of the 2016 Settlement Agreement and the 2016 Consent Injunction, Defendants argue that the agreement and injunction "are premised on the validity of" Mixpac's Candy Colors rights and "[n]ow that Plaintiff's Candy Color Trademark Rights have been found to be functional and thus effectively invalid, the entire legal foundation for Counts I and II has collapsed" such that "[i]t would be inequitable to continue to enjoin Defendants . . .

where third parties including A&N are free to use the Candy Colors." (Id.)

### 2. Defendants' Motion to Vacate the 2016 Consent Injunction and 2020 Preliminary Injunction

Beyond arguing that A&N Trading Co. requires dismissal of Counts I and II of the complaint, Defendants move to vacate pursuant to F.R.C.P 60(b)(5)-(6) the 2016 Consent Injunction and 2020 Preliminary Injunction on the basis that A&N's holding that the Candy Color marks are functional renders the injunctions so inequitable and unfair as to constitute an extraordinary circumstance warranting vacatur. (Mot. at 11-14.) Defendants argue that the 2016 Settlement Agreement similarly should be rescinded pursuant to equitable principles. (Id.)

### 3. Plaintiff's Motion to Dismiss Defendants' Counterclaims and Affirmative Defenses

Prior to the Court of Appeals' decision in A&N Trading Co., Defendants asserted counterclaims for a declaration of non-infringement, declaration of functionality of the Candy Colors feature, violation of the antitrust law, unfair competition, and interference with business relations. (Countercl. at 19-23.)

Defendants also asserted affirmative defenses, including, as relevant here, the invalidity of Plaintiff's trademarks and unclean hands on the part of Plaintiff. (Id. at 14-15.)

Plaintiff argues that several of the counterclaims and affirmative defenses are barred by res judicata because they are

6

the same as counterclaims previously asserted and dismissed with
prejudice by virtue of the 2016 Consent Judgment.  (MTD at 3-9.)
As to the antitrust, unfair competition, and tortious
interference counterclaims, Plaintiff argues alternatively that
these claims should be dismissed for failure to state a claim.
(Id. at 10-13.)  As to Counterclaim I--Defendants' counterclaim
for a declaration of non-infringement--Plaintiff argues that the
claim should be dismissed as a mirror image of Plaintiff's
claims of infringement.  (Id. at 13.)

## II.  Discussion

### A.   Defendant's  Motion  for  Judgment  on  the Pleadings

     "The standard for granting a Rule 12(c) motion for judgment
on the pleadings is identical to that for granting a Rule
12(b)(6) motion for failure to state a claim."  Lively v. WAFRA
Inv. Advisory Grp., Inc., 6 F.4th 293, 302 (2d Cir. 2021)
(cleaned up).  "To survive a Rule 12(c) motion, [the
plaintiff's] complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible
on its face."  Id. (cleaned up).  "The assessment of whether a
complaint's factual allegations plausibly give rise to an
entitlement to relief . . . calls for enough fact[s] to raise a
reasonable expectation that discovery will reveal evidence of
illegal conduct."  Id.  "In making this assessment, [the Court]

7

draw[s] all reasonable inferences in the plaintiff's favor."
Id.  "Judgment on the pleadings is not appropriate if there are
issues of fact which if proved would defeat recovery, even if
the trial court is convinced that the party opposing the motion
is unlikely to prevail at trial."  Id. at 302.  "Thus, where a
question of fact is in dispute, it is improper for the district
court to answer it on a motion for dismissal on the pleadings."
Id.

### 1.  Counts III-VI

Counts III through VI of the complaint allege statutory and
common law trademark infringement, trademark counterfeiting, and
false design origin.  (Compl. at 17-20.)

Registered trademarks are presumptively valid but remain
subject to proof of "any legal or equitable defense or defect"
and "shall be subject to" the defense that "[t]he mark is
functional."  15 U.S.C. § 1115(a)-(b).  See Ezaki Glico
Kabushiki Kaisha v. Lotte Int'l Am. Corp., 986 F.3d 250, 256 (3d
Cir.), as amended (Mar. 10, 2021) ("Even after a mark is
registered, it is a defense to infringement '[t]hat the mark is
functional.'" (quoting 15 U.S.C. § 1115(b)(8)).  Indeed, one
"who asserts trade dress protection has the burden of proving
that the matter sought to be protected is not functional."  15
U.S.C. § 1125(a)(3).

"[A] product feature is considered to be functional in a utilitarian sense if it is (1) essential to the use or purpose of the article, or if it (2) affects the cost or quality of the article." Sulzer Mixpac AG v. A&N Trading Co., 988 F.3d 174, 182 (2d Cir. 2021) (cleaned up). "Product features are essential when they are dictated by the functions to be performed by the article." Id. "A feature affects cost or quality when it permits the article to be manufactured at a lower cost or constitutes an improvement in the operation of the goods." Id. "A feature can still be functional even if it is not essential to a product's use or purpose and does not affect a product's cost or operation. This is referred to as aesthetic functionality, where the aesthetic design of a product is itself the mark for which protection is sought." Id.

Defendants argue that Mixpac is estopped under the doctrine of defensive non-mutual collateral estoppel from arguing that Defendants infringed Mixpac's Candy Color marks in light of the Second Circuit's decision in A&N, which held that the Candy Color marks are functional and thus not protected under Trademark law. Cf. Blair v. Alstrom Transportation, Inc., No. 16 Civ. 3391 (PAE), 2020 WL 4504842, at *5 (S.D.N.Y. Aug. 5, 2020) (granting motion for judgment on the pleadings as to patent claims where patents at issue were canceled).

"When a motion to dismiss is premised on the doctrine of
collateral estoppel, a court is permitted to take judicial
notice of and consider the complaints and the record generated
in both actions without having to convert the motion to dismiss
into a summary judgment motion." Peralta v. St. Lukes Roosevelt
Hosp., No. 14 Civ. 2609 (KPF), 2015 WL 3947641, at *1 n.1
(S.D.N.Y. June 26, 2015) (cleaned up).  "In general, collateral
estoppel applies when (1) the identical issue was raised in a
previous proceeding; (2) the issue was actually litigated and
decided in the previous proceeding; (3) the party had a full and
fair opportunity to litigate the issue; and (4) the resolution
of the issue was necessary to support a valid and final judgment
on the merits." MMA Consultants 1, Inc. v. Republic of Peru,
245 F. Supp. 3d 486, 518 (S.D.N.Y.), aff'd, 719 F. App'x 47 (2d
Cir. 2017).

Here, this test is met.  First, the issue of whether
Mixpac's Candy Color marks are functional and thus not protected
under Trademark law was raised in A&N.  A&N Trading Co., 988
F.3d at 177 ("A&N argues on appeal that Mixpac's use of
particular colors on mixing tips is functional because the
colors serve as a color-coding scheme that signifies the size of
a mixing tip.").

Second, the issue was actually litigated in the district
court and before the Court of Appeals, which concluded that "the

record evidence establishes that Mixpac's use of colors on their mixing tips affects their quality by identifying the mixing tip's diameter, rendering the trade dress functional." Id. at 184.

Third, a party has a full and fair opportunity to litigate an issue if it was "fully able to raise the same factual or legal issues assert[ed in the prior proceeding]." LaFleur v. Whitman, 300 F.3d 256, 274 (2d Cir. 2002). There is little doubt that Mixpac was fully able to raise the legal issue of whether the use of colors on its mixing tips rendered the trade dress functional. The fact that DXM was not a defendant in the A&N case does not change the reality that Mixpac had a full and fair opportunity to litigate this issue.

Fourth, and finally, "final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Wolfstein v. Docteroff, 133 F.3d 210, 216 (3d Cir. 1997). Mixpac's argument against the finality of the the Court of Appeals' decision in A&N relied principally on its then pending petition for a writ of certiorari from the U.S. Supreme Court. (Opp. at 10.) However, the Supreme Court has since denied Mixpac's petition, confirming the finality of the A&N decision. See A&N Trading Co., 988 F.3d 174 (2d Cir. 2021), cert. denied, 142 S. Ct. 1359 (2022). Moreover, even if

11

Mixpac's petition for writ of certiorari was not denied, pending appellate review would not preclude the application of collateral estoppel.  See Life Technologies, Inc. v. Promega Corp., 189 F.R.D. 334, 339 (D. Md. 1999).

Indeed, Plaintiff does not seriously press in its papers that its claims as to the Candy Color marks should survive Defendants' motion for judgment as a matter of law once the A&N decision became final.  (See Opp. at 10-11.)  Plaintiff instead argues that the motion should be denied because at least one of the trademarks alleged to have been infringed involves a "right in the dome shape without color that are not impacted by the A&N Decision."  (Opp. at 10.)  Defendants agree, noting that its motion "does not include Plaintiff's U.S. Trademark No. 4,051,261 on its dome shape, non-color mixing top, which is the only non-color trademark in this case."  (Reply. at 8-9.)

Accordingly, Mixpac is estopped from relitigating the functionality of the Candy Color marks that were actually and finally litigated in A&N.  Defendants' motion for judgment on the pleadings is granted in part as to Counts III through VI, and these counts are dismissed with prejudice except as to U.S. Trademark No. 4,051,261.

### 2.  Count VII

Count VII of the complaint alleges common law unfair competition.  "[T]he essence of unfair competition under New

York common law is the bad faith misappropriation of the labors and expenditures of another." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995) (cleaned up); see also Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another. . . .  Central to this notion is some element of bad faith.").

Although Defendants list Count VII as one of the counts of the Complaint on which they seek judgment as a matter of law, Defendants' papers contain no citation to any case involving unfair competition and Defendants do not make any specific argument as to why the A&N decision compels judgment in their favor.  Accordingly, Defendants have not met their burden of establishing that judgment should be entered in their favor as a matter of law on Count VII.

### 3.   Counts I-II

The majority of the parties' briefing on Defendants' motion for judgment on the pleadings relates to Counts I and II, which allege breach of the 2016 Settlement Agreement and the 2016 Consent Injunction.  (Compl. at 15-17.)  Defendants argue that the agreement and injunction "are premised on the validity of" Mixpac's Candy Colors rights and "[n]ow that Plaintiff's Candy Color Trademark Rights have been found to be functional and thus

13

effectively invalid, the entire legal foundation for Counts I and II has collapsed" such that "[i]t would be inequitable to continue to enjoin Defendants . . . where third parties including A&N are free to use the Candy Colors."  (Mot. at 3.) Plaintiff counters that the settlement and consent injunction "have nothing to do with the validity of Mixpac's Candy Colors." (Opp. at 5 (emphasis omitted).)

The Court agrees that the agreement and injunction are not premised on the validity of Mixpac's Candy Colors marks. Neither the agreement nor the consent injunction mention functionality, and neither includes as a condition to their enforceability or validity the existence of trademark rights in the underlying Candy Colors marks.  See S.E.C. v. Conradt, 309 F.R.D. 186, 188 (S.D.N.Y. 2015) ("Relief under Rule 60(b) is not intended to allow one side of a settlement agreement to obtain the benefits of finality while placing the other side at risk that future judicial decisions will deprive them of the benefit of their bargain.  When it comes to civil settlements, a deal is a deal, absent far more compelling circumstances than are here presented.").  Defendants argue that the Conradt decision is inapposite because unlike in that case, "the vitality of the 2016 Settlement Agreement and the [2016 Consent Judgment] was based 100% on the validity of the Color Trademarks" and was "the

14

sine qua non of those instruments." (Reply. at 4-5.) But
again, the Court disagrees.

A deal is a deal, and while the Court of Appeals' decision
in A&N forecloses Plaintiff's claims sounding in infringement as
to those marks actually litigated and decided in that case, it
does not provide a basis for vacating or rescinding the parties'
"calculated settlement" in the prior litigation between these
parties. See United States v. Bank of N.Y., 14 F.3d 756, 760
(2d Cir. 1994); W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.,
977 F.2d 558, 563 (Fed. Cir. 1992) (denying a Rule 60(b) motion
where, although the party might now be at a disadvantage with
respect to other competitors of the plaintiff, "both parties
understood [the deal] at the time of settlement" and "the
parties each gave up something they might have won had they
proceeded with the litigation").

The 2016 Settlement Agreement, for example, includes eight
"whereas" clauses, setting forth the parties' mutual
understandings in entering into the agreement. None of those
clauses states that the parties understood the trademarks at
issue to be valid or non-functional. And while the parties
could have included language elsewhere in the agreement
providing that some or all of its terms would extinguish upon a
finding of trademark invalidity or functionality, the parties
did not do so. Or, in the alternative, Defendants had the

option not to settle but instead to litigate their functionality claims to conclusion.  (See Answer, Affirmative Defenses and Counterclaims of Defendants DXM Co., Ltd. and Dentazon Corporation, Counterclaim II, dated March 21, 2016 [dkt. no 26 in 15 Civ. 9359].)  But they declined to pursue that option and instead made a deal.  To repeat:  a deal is a deal.

Hence, Defendant's motion for judgment on the pleadings as to Counts I and II is denied.

### B.   Defendants' Motion to Vacate the 2016 and 2020 Injunctions and to Rescind the 2016 Consent Judgment

Plaintiff moves pursuant to the F.R.C.P. 60(b) and its equitable powers to vacate the injunctions and to rescind the 2016 Settlement Agreement.

Rule 60(b) provides that a "court may relieve a party . . . from a final judgment, order or proceeding" where, inter alia, "applying it prospectively is no longer equitable" or for "any other reason that justifies relief."  A Rule 60(b) motion is "generally not favored and is properly granted only upon a showing of exceptional circumstances."  Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (cleaned up).  "The burden of proof is on the party seeking relief from judgment."  Id. at 55 (cleaned up).  "The Second Circuit has imposed a three-prong test in order for a Rule 60(b) motion to prevail: First, there must be 'highly convincing' evidence supporting the

16

motion; second, the moving party must show good cause for failing to act sooner; and third, the moving party must show that granting the motion will not impose an undue hardship on the other party." PG 1044 Madison Assocs., L.L.C. v. Sirene One, L.L.C., 229 F.R.D. 450, 452 (S.D.N.Y. 2005) (cleaned up). "Rule 60(b) cannot be used to avoid the consequences of a party's decision to settle the litigation or to forego an appeal from an adverse ruling." Sampson v. Radio Corp. of Am., 434 F.2d 315, 317 (2d Cir. 1970).

Defendants argue that continuing to enforce the 2016 Settlement Agreement, the 2016 Consent Injunction, and the 2020 Preliminary Injunction "would be inequitable because Plaintiff's Candy Color Trademark Rights on which the Agreement and Injunctions are premised have been found to be functional and thus effectively invalid." (Mot. at 12.) Although it is true that the Candy Color marks have been found to be functional and thus effectively invalid, it does not follow from that that the injunctions and the Settlement Agreement must therefore be vacated. As discussed, the 2016 Settlement Agreement and related 2016 Consent Injunction were not premised on an understanding that the Candy Colors marks were valid. And the 2020 Preliminary Injunction in this case is not based on the likelihood of success of Plaintiff's claim that Defendants infringed Plaintiff's mark; it is based on the Court's finding

17

that Plaintiff is likely to succeed on its claim that
Defendants' alleged distribution of a new product line violates
the 2016 Settlement Agreement.

Accordingly, Defendants' motion to vacate the injunctions
is denied for lack of any exceptional circumstances, and
Defendants' motion to rescind the 2016 Settlement Agreement is
similarly denied.

### C.   Plaintiff's Motion to Dismiss Defendant's Counterclaims and Affirmative Defenses

#### 1.   Counterclaim I - Declaration of Non-Infringement

With respect to Counterclaim I, which seeks a declaration
of non-infringement, Mixpac argues that this claim fails because
it is a "mirror image" of its infringement claim in Count III of
the Complaint.  (See MTD at 13.)  Under Federal Rules of Civil
Procedure Rule 12(f), "[t]he court may strike from a
pleading . . . any redundant . . . matter."  Fed. R. Civ. P.
12(f).  "In determining whether a counterclaim is merely a
mirror image of a claim, the court must consider whether a case
or controversy would still exist in connection with the
counterclaim if the court entered a judgment dismissing the
opponent's claim."  Worldwide Home Prods., Inc. v. Bed Bath and
Beyond, Inc., No. 11 Civ. 03633, 2013 WL 247839, at *2 (S.D.N.Y.
Jan. 22, 2013).

The Court above largely granted DXM's motion for judgment on the pleadings with regard to Mixpac's infringement claims. That is tantamount to the declaration of non-infringement that DXM seeks.  DXM's argument that this counterclaim should nevertheless survive because it raised multiple grounds for non-infringement is uncompelling because following this Court's judgment on the merits it can face no future threat of trademark infringement from Mixpac as to the Candy Color marks.  Compare Larson v. General Motors Corporation, 134 F.2d 450, 453-54 (2d Cir. 1943) (finding counterclaims unsustainable following a judgment on the merits because the defendants faced no future threat of litigation, and thus, no case or controversy existed in connection with the defendant's counterclaim), with Orientview Techs. LLC v. Seven For All Mankind, LLC, No. 13 CIV. 0538 PAE, 2013 WL 4016302 (S.D.N.Y. Aug. 7, 2013) ("Were the case to be dismissed short of a ruling on the merits, 7FAM would remain vulnerable to liability on the same claims.  Thus, a case or controversy would still exist in connection to the counterclaim.").

Defendants argue in the alternative that dismissal of its counterclaim seeking a declaration of non-infringement will leave a cloud over its operations due to a potential voluntarily dismissal by Mixpac.  This argument is similarly uncompelling. Defendants need not fear future claims of trademark infringement

19

as to the Candy Colors marks in light of this decision and the
A&N decision.  The only "cloud" that remains over Defendants'
operations with respect to the Candy Color marks is the
continued effect of the 2016 Settlement Agreement, 2016 Consent
Injunction, and 2020 Preliminary Injunction.  Thus, Counterclaim
I is dismissed as a mirror image of Count III of the Complaint.

### 2.   Counterclaim II – Declaration of Functionality

Counterclaim II alleges functionality of the Candy Color
marks.  (Countercl. at 19.)  Because Mixpac's infringement
claims are dismissed in light of the the Court of Appeals'
decision in A&N, which held that the majority of the trademarks
at issue in this case are functional and thus not trademarkable,
this counterclaim is dismissed as moot except as to U.S.
Trademark No. 4,051,261.

### 3.   Counterclaims III-V

Counterclaims III through V allege violations of antitrust
law, unfair competition, and interference with business
relations.  (Countercl. at 19-23.)  Plaintiff raises two
separate theories in moving to dismiss these counterclaims.
Plaintiff first argues that these counterclaims are barred by
res judicata because they are the same as counterclaims
dismissed with prejudice in the 2015 litigation.  (MTD at 3-9.)
Plaintiff then argues in the alternative that these
counterclaims should be dismissed for failure to state a claim

on which relief can be granted.  (<u>Id.</u> at 10-13.)  The Court will address each ground for dismissal in turn.

> **a.   Counterclaims III-V are Not Barred by <u>Res Judicata</u>**

The doctrine of <u>res judicata</u> applies when "(1) the previous action involved an adjudication on the merits, (2) the previous action involved the [parties] or those in privity with them [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." <u>Pike v. Freeman</u>, 266 F.3d 78, 91 (2d Cir. 2001).  "[C]ourts must be mindful that a claim 'arising subsequent to a prior action . . . is not barred by <u>res judicata</u>' even if the new claim is 'premised on facts representing a continuance of the same course of conduct.'" <u>TechnoMarine SA v. Giftports, Inc.</u>, 758 F.3d 493, 499 (2d Cir. 2014) (quoting <u>Storey v. Cello Holdings, L.L.C.</u>, 347 F.3d 370, 383 (2d Cir. 2003)).

Here, DXM's Counterclaims III through V are premised on facts representing a continuance of the same course of conduct which Mixpac engaged in prior to 2016.  DXM now seeks to introduce post-2016 evidence to demonstrate that the Candy Colors are functional.  (MTD Opp. at 13.)  Mixpac's arguments that DXM previously alleged improper enforcement of trademark registrations and pointed to customer demand are unconvincing because they do not account for the fact that DXM's current

allegations involve conduct prior to 2016 coupled with conduct
subsequent to 2016.  See TechnoMarine, 758 F.3d at 502 (holding
that infringement claim is not barred by res judicata because
new instances of infringement had occurred after the
settlement); see also Lawlor v. Nat'l Screen Serv. Corp., 349
U.S. 322, 327-28 (1955) ("That both suits involved essentially
the same course of conduct is not decisive.  Such a course of
conduct . . . may frequently give rise to more than a single
cause of action.").  Mixpac's argument that DXM has breached the
settlement agreement and therefore cannot rely on it is
similarly unconvincing.  See Pena-Barrero v. City of New York,
2017 WL 1194477 (S.D.N.Y. March 20, 2017) ("[N]either res
judicata nor the Settlement Agreement bars plaintiff from
pointing to pre-settlement events as evidence to support his
post-settlement claims.").  The terms of the 2016 Settlement
Agreement, which the Court held above remains binding on DXM,
anticipated the present scenario in which Mixpac asserted a
claim against DXM for later alleged infringement, and it
includes express terms permitting DXM to assert any and all
defenses and counterclaims in response to such a claim for
infringement.  Thus, res judicata does not bar DXM's
counterclaims III through V.

### b. Counterclaims III and IV are Dismissed Without Prejudice

The Court now turns to Mixpac's alternative argument that Counterclaims III through V should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.  With regard to Counterclaim III alleging violation of antitrust laws and Counterclaim IV alleging unfair competition, Mixpac points to the Noer-Pennington doctrine of immunity from antitrust litigation, which states that "plaintiffs cannot incur antitrust liability for instituting a lawsuit unless the litigation is a sham."  De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc., No. 4 Civ. 4099 (DLC), 2005 WL 1164073, at *9 (S.D.N.Y. May 18, 2005).  To qualify as a sham, litigation must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  Id.  "A 'reasonable belief that there is a chance that a claim may be held valid upon adjudication' provides an absolute defense precluding a finding of an antitrust violation."  Id. (quoting Prof'l Real Estate Investors v. Columbia Pictures, 508 U.S. 49, 60 (1993)).

Here, DXM fails to demonstrate that Mixpac's assertion of its Candy Color marks was objectively baseless.  DXM alleges that Mixpac's claims are objectively baseless because "neither

Mixpac nor any reasonable person in Mixpac's position, could assert in good faith infringement of marks . . . which are known to be functional." (Countercl. at 21.)  To the contrary, at the time of this motion Mixpac had received (1) a trademark registration from the USPTO, (2) consent and default judgements against DXM, and (3) a recent trial decision affirming that its enforcement of this trademark was valid against A&N.  This repeated affirmation of Mixpac's right to enforce its Candy Color Marks is more than sufficient to establish that it could reasonably expect success on the merits--even if that expectation ultimately was undermined by the Court of Appeals' decision in A&N.  "Because it is clear even at this early stage of the litigation that defendants will be unable to show that the plaintiffs' trademark claims are objectively baseless, this is an appropriate case for the application of Noerr-Pennington immunity." De Beers LV Trademark Ltd. at *10.  Thus, Counterclaims III and IV are dismissed with prejudice as to DXM's allegations that Mixpac's claim of trademark infringement constitutes a "sham litigation."  Counterclaims III and IV are dismissed without prejudice as to DXM's allegations that Mixpac "has illegally attempted to secure and maintain a monopoly" in the relevant market by "attempt[ing] to coerce [DXM] to sign Consent Judgments."

c.   **Counterclaim V is Dismissed With Prejudice**

Counterclaim V alleges interference with business relations.  Defendants contend that Mixpac contacted eBay to flag DXM and Dentazon's color-coded mixing tip products as "counterfeits" and "infringements."  (Countercl. at 22-23.) These products were subsequently delisted from eBay, and Defendants have been unable to obtain a relisting for these products.  (Id.)

To state a claim for interference with business relations, a party must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."  Lombardo v. Dr. Suess Enters., LP, No. 16 Civ. 9974, 2017 WL 1378413, at *4 (S.D.N.Y. April 7, 2017).  To plead the third element of "improper means," a party must allege conduct that "(1) amounts to a crime or independent tort; (2) was done for the sole purpose of injuring [claimant]; or (3) constitutes 'extreme,' 'unfair,' and 'egregious' behavior."  Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd., 568 F. Supp. 2d 329, 348 (S.D.N.Y. 2008).  "Courts routinely apply the Noerr-Pennington doctrine when assessing

tortious interference claims." <u>Lewin v. Richard Avedon Corp.</u>,
2015 WL 3948824, at *27 (S.D.N.Y. June 26, 2015).

Here, DXM fails adequately to plead that Mixpac used
improper means in its contact with eBay.  Defendants allege that
Mixpac "contacted eBay and asserted that DXM's and Dentazon's
color-coded mixing tip products were 'counterfeits' and
'infringements' of Mixpac's products and trademark
registrations."  (Countercl. at 22-23.)  However, "[a] trademark
owner is entitled to advise others of his trademark rights,
[and] to warn others that they or others are or may be
infringing his rights."  <u>Radiancy, Inc. v. Viatek Consumer</u>
<u>Prods. Group. Inc.</u>, 138 F. Supp. 3d 303, 328 (S.D.N.Y. 2014).
Defendants do not allege any conduct beyond this mere
"contacting" of eBay, and they do not allege that the purpose of
this contact was to injure DXM or that Mixpac's conduct amounted
to an independent crime or tort.  Thus, Counterclaim V is
dismissed with prejudice for failure to state a claim.

### 4.  Affirmative Defenses II and VI

#### a.  Affirmative Defense II

Defendants' Second Affirmative Defense claims that
Plaintiff's infringement claims are barred because the Candy
Color features of Plaintiff's trademarks are functional.
(Countercl. at 14.)  As detailed above, Mixpac's infringement
claims are dismissed in light of the the Court of Appeals'

decision in <u>A&N</u>, which held that the majority of the trademarks at issue in this case are functional and thus not trademarkable. Thus, this affirmative defense is stricken as moot except as to U.S. Trademark No. 4,051,261.

### b.   Affirmative Defense VI

Defendants' Sixth Affirmative Defense claims that the equitable relief sought by Plaintiff is barred by its unclean hands.  (Countercl. at 15.)  Plaintiff Mixpac moves to dismiss this defense on the grounds that DXM does not allege what acts constitute unclean hands.  To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a party must plead "only enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

DXM fails to meet this standard.  In asserting this affirmative defense, DXM merely states that "[t]he equitable relief sought by Plaintiff is barred by its unclean hands." (Countercl. at 15.)  DXM does not even go so far as to identify which specific conduct has left Plaintiff with "unclean hands." Furthermore, Plaintiff pointed out this deficiency in its memorandum in support of its motion to dismiss counterclaims and affirmative defenses.  (MTD. at 9-10.)  Despite being alerted to this deficiency by Plaintiff's memorandum, DXM did not clarify

this ambiguity in its opposition memorandum.  Thus, Plaintiff's motion to dismiss Affirmative Defense VI is granted.

### III. Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted as to Counts III through VI of the Complaint and denied as to Counts I, II, and VII.  Defendants' motion to vacate the 2016 Consent Injunction and 2020 Preliminary Injunction and to rescing the 2016 Settlement Agreement is denied.

Plaintiff's motion to dismiss Counterclaim I is granted, and it is dismissed with prejudice.  Plaintiff's motion to dismiss Counterclaim II is granted, and it is dismissed with prejudice, except as to U.S. Trademark No. 4,051,261. Plaintiff's motion to dismiss Counterclaims III and IV are granted with prejudice as to DXM's allegations that Mixpac's claim of trademark infringement constitutes a sham litigation but dismissed without prejudice as to DXM's allegations that Mixpac illegally attempted to secure and maintain a monopoly by, among other things, attempting to coerce DXM to sign consent judgments.  Counterclaim V is dismissed with prejudice.

DXM's Affirmative Defense II is stricken as moot except as to U.S. Trademark No. 4,051,261.  Mixpac's motion to strike Affirmative Defense VI is granted.

The Clerk of the Court shall mark the motions (dkt. nos. 37 and 108) as closed.

**SO ORDERED.**

Dated:   New York, New York
         September 15, 2022

_____
LORETTA A. PRESKA
Senior United States District Judge